UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNIVAR USA, INC.,

    Petitioner,

v.

HAAS TCM, INC. *et al.*,

    Respondents.

CASE NO. C09-344 RSM

ORDER GRANTING PETITIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT TO COMPEL ARBITRATION

## **I. INTRODUCTION**

This matter comes before the Court on Respondents' motion to dismiss (Dkt. #10), and Petitioner's cross-motion for summary judgment (Dkt. #15). Respondents argue that Petitioner's petition to compel arbitration is improper because one of the named respondents is not a party to the agreement. Respondents also contend that the specific arbitration provision should be excluded because there are conflicting agreements in this case. Respondents indicate that when the arbitration provision is ignored, traditional venue principles apply and mandate that the case should either be dismissed pursuant to FRCP 12(b)(2) or transferred to federal court in Pennsylvania pursuant to 28 U.S.C. § 1406(a).

Petitioner responds that the parties clearly entered into a valid and enforceable arbitration agreement. Therefore Petitioner seeks an order from the court compelling the parties to immediately submit to arbitration in Seattle, Washington.

For the reasons set forth below, the Court agrees with Petitioner, and GRANTS Petitioner's cross-motion for summary judgment to compel arbitration.

ORDER
PAGE - 1

## II. DISCUSSION

### A. Background

On April 29, 2009, Petitioner Univar USA, Inc. ("Univar") and an entity by the name of Haas TCM II Verasun entered into an agreement for the purchase and sale of certain goods. Pursuant to the agreement, Univar agreed to provide Haas TCM II Verasun with chemicals, including caustic soda, sulfuric acid, and urea in exchange for payment. The agreement was signed by Terry Hill, Chief Commercial Officer of Univar, and Anthony Bell, Chief Administrative Officer at the time of both Respondent Haas TCM Inc. ("Haas TCM") and Respondent Haas TCM Processing LLC ("Haas Processing").

The agreement states that "[t]his offer and any agreement formed hereby is SUBJECT TO UNIVAR'S STANDARD TERMS AND CONDITIONS OF SALE A COPY OF WHICH IS ON THE REVERSE SIDE." (Dkt. #13, Decl. of Canini, Ex. 1) (emphasis in original). Univar's standard terms and conditions contain an arbitration clause. This clause provides that "[t]he parties will submit any dispute related to this Agreement to arbitration in Seattle, Washington before one arbitrator under the American Arbitration Associations' Commercial Arbitration Rules." (*Id.*, Ex. 2, § 18).

Univar indicates that Respondents failed to provide Univar with payment under the contract. Specifically, Univar contends that Respondents owe Univar at least $3,696,039 on outstanding invoices. (Dkt. #12 at 3). As a result, Univar demanded arbitration pursuant to its contract. Respondents did not concede to arbitration, and the instant petition to compel arbitration followed.

### B. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that any contract evidencing an intent to arbitrate must be submitted to arbitration. *See* 9 U.S.C. § 2. "Congress enacted the FAA to overcome judicial resistance to arbitration . . . and to declare a national policy favoring arbitration of claims that parties contract to settle in that matter." *Vaden v. Discover Bank*, 129 S.Ct., 1262, 1271 (2009) (internal quotations and citations omitted). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which

parties had entered . . . [and to] rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (finding that the primary purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms").

Whether a proceeding is subject to arbitration is determined by examining the language of the agreement. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). Courts should refer a dispute to arbitration if (1) there is a valid agreement to arbitrate, and (2) the agreement encompasses the dispute. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party opposing arbitration bears the burden of showing that an agreement to arbitrate is not enforceable. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that districts courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218 (emphasis in original).

Here, Respondents initially contend that the arbitration clause is unenforceable because Haas TCM is not a signatory to the purchase and sale agreement binding the parties to Univar's arbitration provision. In support of this argument, Respondents highlight that the agreement at-issue indicates that Haas TCM II Verasun is the only entity that is bound to the agreement. This argument is without merit.

"General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (citation omitted). "Among these principles are '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d. Cir. 1995)). A CEO or director of an entity can bind a nonsignatory to an arbitration agreement. *See Boston Telecomms. Group, Inc. v. Deloitte Touche Tohmatsu*, 249 Fed.Appx. 534, 539 (9th Cir. 2007).

In the instant case, there is no dispute that Mr. Bell, who was then CAO of both Haas TCM and Haas Processing, signed the agreement compelling arbitration. (*See* Dkt. #19, Supp. Decl. of Gutknecht, ¶ 4) ("At the time the Supply Sale Agreement was signed, Tony Bull was the Chief Administrative Officer of both [Haas TCM] and [Haas] Processing."). As CAO, Mr. Bell is clearly an agent for both entities.

Moreover, the agreement states that "[t]his offer and any agreement formed hereby is SUBJECT TO UNIVAR'S STANDARD TERMS AND CONDITIONS OF SALE A COPY OF WHICH IS ON THE REVERSE SIDE" (Decl. of Canini, Ex. 1) (emphasis in original). Univar's terms state that "[t]he parties will submit any dispute related to this Agreement." (*Id.*, Ex. 2, § 18). Combined with the Court's duty to construe arbitration agreements favorably, it is unequivocally clear that Mr. Bell has bound Haas TCM to the arbitration agreement. To hold otherwise would allow Respondents to avoid the practical consequences of an agreement to arbitrate by effectively nullifying the rule requiring arbitration. *See Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 2007 WL 2768995, *7 (N.D.Cal. 2007) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir. 1990)). Respondents' arguments to the contrary amount to semantic quibbles.

Respondents do not dispute that at the very least, Haas Processing is a party to the agreement. (*See* Dkt. #18 at 2-3) ("[I]t is clear and beyond challenge, that the party to the Supply Sale Agreement is [Haas] Processing[.]"). Accordingly, the arbitration provision at-issue governs both entities named by Univar in its petition to compel arbitration.

Respondents nonetheless contend that the Court should somehow ignore the arbitration provision on the grounds that subsequent purchase orders create conflicting provisions. Respondents indicate that the purchase order forms contain choice of forum language that conflicts with the provision compelling arbitration in Univar's terms and conditions. This argument is likewise without merit.

The controlling agreement states that "[u]nless otherwise stated and *agreed to by the parties*, Univar's standard terms and conditions of sale, which are attached, shall apply." (Decl. of Canini, Ex. 1) (emphasis added). Therefore in order to change or otherwise modify

ORDER
PAGE - 4

the existing arbitration agreement, Respondents must show that the parties agreed to an alternative agreement. However, it is beyond dispute that no such subsequent agreement was ever entered into by the parties. Under such circumstances, the arbitration provision controls and the parties will be compelled to submit to arbitration pursuant to 9 U.S.C. § 2.

Because the Court finds that this matter should be referred to arbitration, the Court finds no reason to analyze the parties' arguments with respect to personal jurisdiction pursuant to FRCP 12(b)(2) or proper venue pursuant to 28 U.S.C. 1406(a).

The Court also does not find any grounds to dismiss the case. The FAA provides for a stays of proceedings in federal district court when an issue in the proceeding is referable to arbitration. *See* 9 U.S.C. § 3. Indeed, this district court routinely stays cases that are referred to arbitration. *See Jeld-Wen Inc. v. Merrill Lynch Intern. Inc.*, 2009 WL 159227, *5 (W.D. Wash. Jan 22, 2009); *Olson v. Alterra Healthcare Corp.*, 2008 WL 4379056, *2 (W.D. Wash. Sep. 23, 2008); *Huang v. Washington Mut. Bank*, 2008 WL 4103918, *7 (W.D. Wash. Aug. 25, 2008). Accordingly, the Court shall stay this matter pending arbitration.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Respondents' motion to dismiss (Dkt. #10) is DENIED, and Petitioner's cross-motion for summary judgment to compel arbitration (Dkt. #15) is GRANTED. The Court shall STAY the instant proceedings pending arbitration. The parties are DIRECTED to submit a Joint Status Report informing the Court of the status of the arbitration no later than six (6) months from the date of this Order.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this __3__ day of August, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 5